**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | | |
|---|---|---|
| **SUSAN G. FONTENOT** | * | **CIVIL ACTION NO. 08-1156** |
| **VERSUS** | * | |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

**MEMORANDUM RULING**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment. For the reasons assigned below, the decision of the Commissioner is **REVERSED** and the matter **REMANDED** for further proceedings.

**Background & Procedural History**

Susan G. Fontenot protectively filed the instant application for Title II Disability Insurance Benefits on December 12, 2005. (Tr. 108-110). She alleged disability since July 31, 2005, due to cushings disease, depression, fibromyalgia, and arthritis. (Tr. 108, 133). The state agency denied the application at the initial stage of the administrative process. (Tr. 47, 96-99). Thereafter, Fontenot requested and received a March 14, 2007, hearing before an Administrative Law Judge ("ALJ"). (Tr. 499-513).[1] However, in a February 27, 2008, written decision, the

_____

[1] The ALJ held supplemental hearings on September 20, and November 19, 2007. (Tr. 514-549).

ALJ determined that Fontenot was not disabled under the Act, finding at Step Four of the

sequential evaluation process that she was able to return to her past relevant work as an analyst

II. (Tr. 13-34). Fontenot appealed the adverse decision to the Appeals Council. However, on

June 30, 2008, the Appeals Council denied Fontenot's request for review; thus the ALJ's

decision became the final decision of the Commissioner. (Tr. 6-8).

On August 8, 2008, Fontenot sought review before this court. She alleges the following

errors,

(1)     the ALJ's determination that plaintiff does not suffer a severe mental
        impairment(s) is not supported by substantial evidence; and

(2)     the ALJ's residual functional capacity assessment is not supported by substantial
        evidence.

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the

ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa*

*v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is

supported by substantial evidence, the findings therein are conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported

by substantial evidence when the decision is reached by applying the improper legal standards.

*Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v.*

*Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a

preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789

(5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible

medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)     An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)     An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3)    An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*,  239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

<u>Analysis</u>

**I.  No Severe Mental Impairment**

The ALJ found at Step Two of the sequential evaluation process that Fontenot suffers severe impairments of fibromyalgia, degenerative joint disease of the fingers, adrenal insufficiency due to prolonged steroid use; anemia; cervical degenerative disc disease with spinal stenosis; and hypertension.  (Tr. 18).  He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process.  (Tr. 19).

4

In his Step Three assessment, the ALJ determined that plaintiff's anxiety/depression was a medically determinable mental impairment, but that it was non-severe. (Tr. 18). Plaintiff contends that the ALJ's determination is not supported by substantial evidence because he failed to consider the findings of a non-examining agency physician, Cheryl Marsiglia, Ph.D., who indicated that Fontenot's mental impairment(s) was severe. (Tr. 253-266).

Under the regulations, a psychiatric review technique form must be completed during the initial and reconsideration phases of the administrative review process. 20 C.F.R. § 1520a(e). The psychiatric review technique rates the degree of functional limitation in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 1520a(c). The ALJ must incorporate the pertinent findings and conclusions of the psychiatric review technique into his decision. *Id*.

Here, the ALJ applied the psychiatric review technique, but failed to address the contrary findings of the state agency psychologist. Under the regulations, of course, the ALJ is obliged to consider the findings of state agency medical and psychological consultants. 20 C.F.R. § 1527(f)(2)(I). The ALJ's decision must also explain the weight given to the opinions of state agency medical and psychological consultants. 20 C.F.R. § 1527(f)(2)(ii).[2] Nonetheless, "[p]rocedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Plaintiff principally argues that the ALJ's failure to credit her mental impairment as "severe," materially affected the ALJ's residual functional capacity assessment. (Pl. Brief, pg. 15). Yet,

---

[2] The ALJ mistakenly stated that the consultative psychologist found that plaintiff suffered no more than a mild limitation in adaptation, when the report actually stated that "[a]daptation was *mildly to moderately* limited by the confluence of anxiety and chronic pain." (Tr. 243) (emphasis added).

even if the ALJ had found that Fontenot's mental impairment was severe and had included the moderate limitations of functioning as recognized by the state agency psychologist in his residual functional capacity assessment,[3] the omission was harmless because the ALJ included those additional limitations in a hypothetical to the vocational expert(s) who opined that the additional limitations would not impact plaintiff's ability to perform her past relevant work. (Tr. 505-506, 519). However, because this matter is being reversed on other grounds, this issue may be addressed upon remand. *See*, discussion, *infra*.

## II. Residual Functional Capacity Assessment

The ALJ determined that Fontenot retained the residual functional capacity to perform sedentary work reduced by no more than occasional overhead reaching; the ability to frequently handle, finger, push/pull and operate foot controls; an inability to climb ladders/ropes/scaffolds or to crawl; the ability to no more than occasionally climb stairs, ramps, balance, kneel, crouch, squat, or stoop; an inability to work at unprotected heights or around dangerous moving machinery (but able to occasionally operate a motor vehicle); and the need to avoid more than occasional exposure to moving mechanical parts, noise, and vibration. (Tr. 19-20).[4]

Plaintiff contends that the ALJ's residual functional capacity is not supported by substantial evidence because the ALJ improperly credited the findings of a non-examining

---

[3] *See*, Tr. 248-251.

[4] Sedentary work entails:

> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

medical expert over the findings of plaintiff's treating physicians. Plaintiff's argument is well-taken. It is manifest that Fontenot's treating physicians who have seen her on a regular basis for several years throughout the relevant period, uniformly believed that her impairments prevented her from meeting the demands of an eight hour workday on a continuing basis. Her three treating physicians, John Hull, M.D.; Uma Rangaraj, M.D.; and Stephen Beene, M.D., plus her physical therapist, each completed forms (apparently supplied by plaintiff's representative) and assigned the following, virtually identical, work-related limitations: 1) the ability to sit, stand, and/or walk for less than one hour in an eight hour day, with the need to alternate sitting and standing throughout the day; 2) the inability to grasp, push and pull, finely manipulate objects, or use her hands and feet for repetitive motions; 3) the ability to occasionally lift/carry up to ten pounds and to occasionally climb, stoop, and kneel and reach above shoulder level; 4) the inability to balance, crouch, crawl, or to work at unprotected heights or around moving machinery; and 5) the need to avoid exposure to marked changes in temperature and humidity and airborne irritants. (Tr. 268-270, 281-282, 345-346, 354-355, 360-361, 379-380, 421-422). They further indicated that plaintiff suffered from fatigue which prevented her from working full time, even in a sedentary position. *Id.*

In lieu of the limitations uniformly recognized by plaintiff's treating physicians, the ALJ accorded significant weight to the findings of a non-examining medical expert, Charles Murphy, M.D.[5] The Fifth Circuit has held, however, that "an ALJ may properly rely on a non-examining

---

[5] The ALJ solicited Dr. Murphy's input via interrogatories dated May 4, 2007. (Tr. 447-454). In conjunction with his response, Murphy completed a medical source statement dated July 8, 2007, wherein he indicated that Fontenot can occasionally lift and carry up to ten pounds; sit up to two hours at a time, for up to six hours in an eight hour workday; and stand and walk for 30 minutes at a time, for a total of two hours in an eight hour workday. (Tr. 455-461). Fontenot can occasionally reach overhead and frequently handle, finger, push and pull. *Id.* She can continuously feel and reach, and can frequently operate foot controls. *Id.* She can never crawl or

physician's assessment when ... those findings are based upon a careful evaluation of the medical

evidence and *do not contradict those of the examining physician*." *Carrier v. Sullivan*, 944 F.2d

243, 246 (5th Cir.1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)) (emphasis

added). Also, a non-examining physician's opinion does not provide good cause for an ALJ to

discount the findings of an examining physician. *See, Lamb v. Bowen*, 847 F.2d 698, 703 (11th

Cir. 1988) (addressing ALJ's reliance upon non-examining physician's opinion to discount

findings of treating physician).[6] Here, Dr. Murphy's findings clearly contradict the findings of

plaintiff's treating physicians, and thus do not provide substantial support for the ALJ's

determination.[7] Once Dr. Murphy's opinion is removed from the equation, the record otherwise

---

climb ladders or scaffolds. *Id*. She can occasionally climb stairs and ramps, balance, stoop, kneel, and crouch. *Id*. She can never tolerate exposure to unprotected heights. *Id*. She can occasionally operate moving mechanical parts and a motor vehicle. *Id*. She can frequently be exposed to other environmental pollutants. *Id*. She can tolerate moderate (office) noise. *Id*. Murphy concluded that the limitations had lasted or were expected to last for 12 consecutive months. *Id*.

[6] The Fifth Circuit cited *Lamb* for the proposition that the reports of non-examining physicians do not provide substantial evidence when the non-examining physician's medical conclusions "contradict or are unsupported by findings made by an examining physician." *Villa, supra* (citing, *Lamb, supra*; and *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980)).

[7] Murphy's findings were premised in part upon a May 22, 2006, consultative examination administered by Hayan Orfaly, M.D. (Tr. 244-247). The examination revealed *inter alia*, that Fontenot had positive tenderness in more than 12 trigger points all over the body, but no deformities in the joints. *Id*. Her range of motion was not significantly affected. *Id*. Orfaly diagnosed possible cushing's disease; adrenal insufficiency; osteoarthritis; fibromyalgia; hypertension, mild; and depression. *Id*. Her gait and station were "okay," with no evidence of end organ damage. *Id*. Her handgrip was slightly decreased. *Id*. Dexterity, grasping and typing with fine movements of the fingers was affected due to some degree of deformity in the finger joints. *Id*. Orfaly did not complete a medical source statement or otherwise indicate the degree of functional limitation imposed by plaintiff's impairments. *Id*.

Dr. Murphy's findings are not necessarily inconsistent with the findings of the state agency's examining physician, Dr. Orfaly. However, this was also true in *Carrier*, where the court found that the ALJ's decision was supported by substantial evidence because he adopted only those portions of the non-examining physician's opinion that did not conflict with the

remains devoid of substantial evidence to support the ALJ's residual functional capacity

assessment.

The undersigned further emphasizes that ordinarily, a treating physician's opinion on the

nature and severity of a patient's impairment will be given controlling weight if it is

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with ... other substantial evidence." 20 C.F.R. § 404.1527(d)(2). "'[T]he ALJ is free

to reject the opinion of any physician when the evidence supports a contrary conclusion.'"

*Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted). However, an ALJ

cannot reject a medical opinion without an explanation supported by good cause. *See, Loza v.*

*Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).

In this case, the ALJ expended considerable effort to explain why he disregarded the

assessments of plaintiff's treating physicians. In the end, however, he frequently returned to the

refrain that the assessments were not consistent with the objective evidence. While that mantra

may be justified in the typical orthopedically-inspired disability claim, it is not particularly

persuasive in the fibromyalgia context. *See, Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d

---

findings of the treating physician. *Carrier*, 944 F.2d at 246. Also, in *Villa v. Sullivan*, the Fifth
Circuit found that the ALJ properly relied upon the non-examining physician's opinion where the
examining physician "*specifically found* that his examination did not confirm [the claimant's]
complaints and that the [impairment] did not cause extreme functional limitations." *Villa*, 895
F.2d at 1023-1024 (emphasis added). No examining physician has issued comparable findings in
this case.

In *Strickland v. Harris*, the Fifth Circuit cited *Simms v. Weinberger*, for the proposition
that reports from non-examining physicians alone are insufficient to support an administrative
decision. *Strickland, supra* (citing *Johnson v. Harris*, 612 F.2d 993, 998 (5th Cir. 1980) and
*Simms v. Weinberger*, 377 F. Supp. 321 (M.D. Fla.1974)). In *Simms*, the court held that a non-
examining physician's report did not provide substantial evidence to support the ALJ's decision
that plaintiff was not disabled where, as here, there was contrary evidence from three examining
physicians and the claimant herself. *Simms, supra*.

Cir. 2003) (citations omitted).  As the Commissioner has noted,

> [f]ibromyalgia is a disorder defined by the American College of Rheumatology (ACR) and we recognize it as medically determinable if there are signs that are clinically established by the medical record. The signs are primarily the tender points. The ACR defines the disorder in patients as "widespread pain in all four quadrants of the body for a minimum duration of 3 months and at least 11 of the 18 specified tender points which cluster around the neck and shoulder, chest, hip, knee, and elbow regions." Other typical symptoms, some of which can be signs if they have been clinically documented over time, are irritable bowel syndrome, chronic headaches, temporomandibular joint dysfunction, sleep disorder, severe fatigue, and cognitive dysfunction.

May 11, 1998, SSA Memorandum; *In Re: Fibromyalgia, Chronic Fatigue Syndrome Objective Medical Evidence Requirements for Disability Adjudication*.

In the instant case, no one disputes that plaintiff suffers from fibromyalgia.[8]  The difficulty stems from assessing the degree of limitation.  During cross-examination, Dr. Murphy testified that once fibromyalgia is diagnosed, there is nothing objective to determine functional capacity.  (Tr. 543).  Murphy then added that Fontenot's complaints exceeded the objective findings.  (Tr. 546).  However, this opinion seems to conflict with Murphy's previous statement that there are no objective criteria to measure functional capacity for those afflicted with fibromyalgia.  Indeed, the courts have recognized that

> [i]n stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results-a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. Hence, the absence of swelling joints or other orthopedic and neurologic deficits is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced.  Rather, these negative findings simply confirm a diagnosis of fibromyalgia by a process of exclusion, eliminating other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue.

*Green-Younger*, 335 F.2d at 108-109 (citations and internal quotation marks omitted).

---

[8]  Dr. Orfaly, documented the presence of fibromyalgia trigger points.  (Tr. 244-247). Fontenot has also exhibited typical symptoms associated with fibromyalgia including irritable bowel syndrome, temporomandibular joint dysfunction, and chronic fatigue.  (*See*, Tr. 434, 446).

Moreover, medical opinions that are premised upon the lack of objective findings are not particularly relevant when assessing the effects of fibromyalgia.  *See, Rogers v. Commissioner of Social Security*, 486 F.3d 234, 245 (6th Cir. 2007).

Fibromyalgia and chronic fatigue syndrome ("CFS") share many symptoms.  *See*, SSR 99-2p.  In its evaluation of CFS, the Commissioner has recognized that the longitudinal medical record is particularly important and that the evaluation and treatment from treating sources is extremely helpful.  *Id*.  Due to the similarity between fibromyalgia and CFS, it stands to reason that the longitudinal medical record and the evaluation from the claimant's treating sources will prove especially probative.  Moreover, when, as here, the claimant's treating physicians are specialists in fields related to the claimant's impairments (in this case, rheumatology, endocrinology, and internal medicine), their opinions are generally entitled to greater weight than those of non-specialists.  *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).[9]  For example, a rheumatologist retains the experience and training to address the functional effects of fibromyalgia.  Likewise, a treating endocrinologist enjoys the professional insight to assess the limitations imposed by plaintiff's documented adrenal insufficiency.

The instant ALJ discounted the limitations assessed by plaintiff's treating physicians due to perceived inconsistencies in their assessments and because he believed it to be improbably that they would all assign virtually identical limitations.  Nonetheless, the ALJ failed to employ available procedures to recontact the treating physicians to satisfy his concerns in these areas.  *See*, 20 C.F.R. § 404.1512(e) (ALJ may recontact treating physicians to resolve ambiguities or conflicts in their reports).  That is not to say that upon remand the ALJ ultimately must credit the

---

[9]  Dr. Hull is a rheumatologist; Dr. Rangaraj is an endocrinologist; and Dr. Beene is an internist.  (*See*, Tr. 268-270, 378, 446).  Although Dr. Murphy is also an internist, he conceded that he was not "the world's authority" on fibromyalgia.  (Tr. 543).

limitations recognized by plaintiff's treating physicians. Further development may provide valid

grounds for discounting the opinions. For instance, the ALJ may employ specialists in

rheumatology and endocrinology who may examine plaintiff, review her extensive treatment

records, and then provide well-reasoned assessments of the limitations imposed by her

impairment(s). The record as it now stands, however, lacks such evidence.

Because the foundation for the ALJ's Step Four determination was premised upon a

residual functional capacity which is not supported by substantial evidence, the undersigned

further finds that the ALJ's ultimate conclusion that plaintiff is not disabled, is likewise not

supported by substantial evidence. Accordingly,

The Commissioner's decision is **REVERSED**, and the matter **REMANDED** for further

proceedings in accordance with this opinion.

THUS DONE AND SIGNED, in Monroe, Louisiana, on the 16th day of March, 2009.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE